FILED

JUN 0 8 2019

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | **CIVIL ACTION NO.** 19-658 |
| *ex rel.* ASHLEY YOHMAN <br> Relator, | **COMPLAINT** |
| v. | **JURY TRIAL DEMAND** |
| EXCELA HEALTH <br> Defendant. | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |

Relator Ashley Yohman, by and through her attorneys, brings this Complaint on behalf of the United States under 31 U.S.C. § 3730. Based on personal knowledge, unless otherwise indicated, and relevant documents, Relator alleges the following:

## I. INTRODUCTION

1. This is an action for damages and civil penalties under the Federal False Claims Act, 31 U.S.C. § 3729 *et seq*. It alleges that Defendant Excela Health falsified payment requests to Medicare and Medicaid by 1) providing services to government pay beneficiaries at a facility not enrolled as a Medicare or Medicaid provider or supplier and 2) improperly submitting claims for payment by falsely representing that services were rendered at a facility properly enrolled with Medicare or Medicaid. This false representation was executed by using the National Provider Identifier (NPI) number of an enrolled facility for a claim where service was rendered at a non-enrolled facility. For purposes of this Complaint, we call this conduct an "NPI swap."

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

2.      Medicare and Medicaid will only pay for services rendered at facilities that are properly enrolled to provide those services. By engaging in NPI swaps, Excela Health received payments from Medicare and Medicaid that would not otherwise have been paid because the services were provided by a non-enrolled facility.

3.      Facilities are required to enroll as Medicare or Medicaid providers or suppliers to ensure they meet the minimum health and safety standards established by the Social Security Act. Failure to enroll circumvents the Department of Health and Human Services' (HHS) ability to ensure facilities providing services to Medicare and Medicaid beneficiaries are compliant with the standards required by state and federal regulations, which include rendering safe and acceptable quality of care.[1] Excela Health's illegal conduct therefore exposes Medicare and Medicaid patients to potential harm because non-enrolled facilities are not monitored by HHS to ensure that federal and state health quality standards are met.

4.      Besides endangering its patients, Excela Health's billing practices—its NPI swaps—are illegal. Relator confirmed this in a communication with Pennsylvania's Department of Human Services (PDHS) in which she described the conduct. PDHS responded: "Having patients seen at one location that isn't enrolled then billing under a different location in order to get paid, constitutes fraud."

5.      Relator told Excela Health about her concerns and about PDHS's conclusion that NPI swaps constituted fraud, but the conduct continues. Accordingly,

---

[1] CMS Program Background and Responsibilities. https://www.cms.gov/Medicare/Provider-Enrollment-and-Certification/CertificationandComplianc/index.html.

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

Excela Health is engaging in ongoing violations of the False Claims Act by submitting false claims to Medicare and Medicaid for payment of services rendered at non-enrolled facilities.

## II.    JURISDICTION AND VENUE

6.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732.

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a), because Defendant can be found and does business in this District. In addition, Defendant has committed acts proscribed by 31 U.S.C. § 3729 *et seq.* in this District.

8.    Relator is aware of no statutorily relevant public disclosure of the allegations or transactions in this Complaint.  Even if such a disclosure had occurred, Relator is an "original source" of the allegations in this Complaint and meets the requirements of 31 U.S.C. § 3730(e)(4)(B).  Relator acquired direct and independent knowledge of the information on which the allegations in this Complaint are based and voluntarily and in good faith provided this information to the government before filing this action.

## III.    PARTIES

### A. Plaintiffs/Relator

9.    The United States of America is the plaintiff on whose behalf the Relator brings this action under 31 U.S.C. § 3729 *et seq.* The United States acts through its

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

various agencies and departments, including the Department of Health and Human Services (HHS), and the Medicaid and Medicare programs.

10.     Relator Yohman is a citizen of the United States and a resident of Westmoreland County, Pennsylvania. Yohman began working at Excela Health in 2014 as a Patient Accounting Representative.

### B. Defendant

11.     Excela Health is a non-profit company duly organized and authorized to conduct business in the State of Pennsylvania. Excela Health's principal office is located in Greensburg, Pennsylvania. Excela Health provides advanced medical care, including home care, hospice, orthopedic, outpatient surgery, ambulatory, and therapy services, among others, to persons in Westmoreland, Fayette, and Indiana counties in western Pennsylvania.

### IV.     STATUTORY AND REGULATORY CONTEXT

12.     Excela Health's NPI swaps constitute false statements that caused false claims to be submitted to Medicare and Medicaid in violation of the False Claims Act.

### A. The False Claims Act

13.     The False Claims Act (FCA), 31 U.S.C. § 3729 *et seq.*, provides:

(a) Liability for Certain Acts.

(1) . . . any person who

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

4

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . . is liable to the United States Government. . . .

(b) Definitions. For purposes of this section—

(1) the terms "knowing" and "knowingly"—

(A) mean that a person, with respect to information--
(i) has actual knowledge of the information;
(ii) acts in deliberate ignorance of the truth or falsity of the information; or
(iii) acts in reckless disregard of the truth or falsity of the information, and

(C) require no proof of specific intent to defraud;

(2) the term "claim"—

(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—
(i) is presented to an officer employee, or agent of the United States; or
(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest and if the United States Government
(I) provides or has provided any portion of the money or property requested or demanded; or
(II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; . .

(2) the term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.[2]

---

[2] It "has never been the test of materiality that the misrepresentation or concealment would *more likely than not* have produced an erroneous decision," rather "the central object of the inquiry [is] whether the misrepresentation or concealment was predictably capable of affecting, *i.e.*, had a

5

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

31 U.S.C. § 3729(a)(1)(A), (b) (FCA as amended by the Fraud Enforcement and Recovery Act of 2009, Public Law 111-21).

## B. Reimbursement by Government-Funded Health Care Programs

15. Medicare, which provides health insurance for aged and disabled individuals, is administered by the Secretary of Health and Human Services (HHS) through the Centers for Medicare and Medicaid Services (CMS). Medicare Part A authorizes payments from federal funds for hospitalization and post-hospitalization care. Medicare Part B similarly pays for medical and other health services, including physician services, certain pharmaceutical products, diagnostic tests, and other medical services not covered by Part A.

16. Medicaid, jointly funded and administered by the federal and state governments, involves payments by the states directly to enrolled providers, with reimbursement from the United States Treasury, to provide medical assistance to individuals including persons who are low-income, blind, or disabled.

17. In 2016, the federal share of Pennsylvania's more than $27 billion expenditure on Medicaid was over 60%.[3]

---

natural tendency to affect, the official decision." *Kungys v. U.S.*, 485 U.S. 759, 771 (1988) (emphasis in original; underlining added). *See also, Univ. Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2002-03 ("Under any understanding of the concept, materiality 'look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation."); *U.S. v. Lindsey*, 850 F.3d 1009, 1017 (9th Cir. 2017) ("materiality is an objective element").

[3] https://ballotpedia.org/Medicaid_spending_in_Pennsylvania.

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

## C. Healthcare Providers Must be Enrolled to Receive Payment

18. To be eligible for Medicare payment, providers and suppliers of those services must be qualified, at the time the services were rendered, to have payments made to them. 42 C.F.R. § 424.5(a)(2).

19. To be qualified to receive payments from Medicare for covered services or items, a provider or supplier must be enrolled in the Medicare program. Once enrolled the provider or supplier receives billing privileges and is issued a valid billing number. 42 C.F.R. § 424.505.

20. A first step towards enrollment is obtaining an NPI number. A health care provider[4] must obtain an NPI for itself and any subpart that would be a covered health care provider as if it were a separate legal entity. The assigned NPI must be used to identify itself on all standard transactions. 45 C.F.R. § 162.410.

21. A Medicare contractor will reject a claim from a provider or supplier if the required NPI is not reported. 42 C.F.R. § 424.506(c)(3).

22. Once an entity has an NPI number it may apply to be an enrolled Medicare provider.[5] If an entity is successfully enrolled, then that enrollment is identified along with its NPI number.

---

[4] Health care provider means a provider of services (as defined in section 1861 of the Act, 42 U.S.C. 1395x(u)), a provider of medical or health services (as defined in section 1861(s) of the Act, 42 U.S.C. 1395x(s)), and any other person or organization who furnishes, bills, or is paid for health care in the normal course of business.

[5] *See* https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/MedEnroll_InstProv_FactSheet_ICN903783.pdf

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

23.     In Pennsylvania, "Medical Assistance" (MA), also known as "Medicaid" is operated by the Pennsylvania Department of Human Services (PDHS). Claims processing is done through the Pennsylvania PROMISe, and providers[6] must be enrolled in order to receive payment from PDHS.

24.     Agencies, entities, institutional providers, health systems, and hospitals must enroll all facilities and locations at which they provide services to MA beneficiaries. PDHS Medical Assistance Bulletin 99-18-11.

25.     As set forth in 55 Pa. Code § 1101.42:

> In order to be eligible to participate in the MA Program, Commonwealth-based providers shall be currently licensed and registered or certified or both by the appropriate State agency, complete the enrollment form, sign the provider agreement specified by the Department, and meet additional requirements described in this chapter and the separate chapters relating to each provider type. . . . Each individual practitioner or medical facility shall have a separate provider agreement with the Department.

26.     Once an entity is enrolled in the Pennsylvania MA Program, it receives a Master Provider Index (MPI) number and a 4-digit "service location" code that together form the providers MA identification number. PDHS Medical Assistance Bulletin 99-18-11 at 1-2.

27.     To bill under the Pennsylvania MA Program, providers use their NPI, though, to submit claims for services rendered. Before paying the claim, the PDHS

---

[6] An individual or medical facility which signs an agreement with the Department to participate in the MA program, including, but not limited to: licensed practitioners, pharmacies, hospitals, nursing homes, clinics, home health agencies and medical purveyors. 55 Pa. Code § 1101.21.

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

billing system (PROMISe) matches the NPI with the MPI to ensure the entity is eligible for payment.

### D. Enrolled Medicare and Medicaid Providers and Suppliers Must Certify Their Compliance with Applicable Laws and Regulations

28.     Once enrolled in Medicare, physicians and health care providers and suppliers must expressly certify compliance with applicable laws, through means such as provider agreements, and signed by physicians and other providers, including hospitals and ambulatory surgical centers, certifying that they will comply with applicable laws (*e.g.*, Forms CMS 855A, 855B, and 855I). The certification includes an acknowledgement that compliance is a condition for receipt of payments from the government.

29.     Similarly, all Medicaid claim forms include the following certifications: 1) "This is to certify that the foregoing information is true, accurate, and complete," and 2) "I understand that payment of this claim will be from Federal and State funds, and that any falsification or concealment of a material fact, may be prosecuted under Federal and State laws." 42 C.F.R. § 455.18.

30.     Under Pennsylvania law, an enrolled provider is prohibited from engaging in various types of fraud with respect to its participation in the MA Program. 55 Pa. Code § 1101.75(a). Among other things an enrolled provided may not:

- present a false or fraudulent claim for furnishing services, 55 Pa. Code § 1101.75(a)(1);

9

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

- submit false information to get greater compensation, 55 Pa. Code § 1101.75(a)(1);

- submit a claim for services or items which were not rendered, 55 Pa. Code § 1101.75(a)(5);

- submit a claim which misrepresents facts about the provision of services, including the "actual provider," 55 Pa. Code § 1101.75(a)(8).

31.     Accordingly, through means such as provider agreements and claim forms, hospitals, other health care facilities, and physicians who participate in federal or state health care programs generally must certify that they have complied with the applicable state and federal rules and regulations in order to receive payment for their services.

## V.     FACTUAL ALLEGATIONS

### A. Relator Identifies Defendant's Illegal Conduct

32.     Relator Yohman began working at Excela Health in 2014.

33.     In her role as Patient Accounting Representative, Relator works with claim reimbursement, processes claims, reviews codes to ensure accuracy, validates medical assistance benefits for patients, and collects documents critical to meeting qualifying criteria. Relator further submitted claims for payment to Medicaid and Medicare.

34.     Excela Health has 3 facilities that are enrolled in Medicare and Medicaid, Frick Hospital, Latrobe Hospital, and Westmoreland Hospital. Westmoreland Hospital is also enrolled in Medicaid.

10

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

35.     Excela Health's Norwin Medical Commons facility is not properly enrolled in either Medicaid or Medicare. Some of Defendant's facilities in which improper billing took place include Norwin Medical Commons, Excela Physical Improvement Center (EPIC Rehab) (located at Excela Latrobe Hospital), and Defendant's offsite QuickDraw Centers. Neither EPIC Rehab nor the QuickDraw Centers are identified by an NPI at all.

36.     In December 2018, Relator became aware that Defendant had a practice of swapping NPI numbers to receive payment on claims submitted to Pennsylvania's Medicaid program and Medicare when services were actually rendered at a non-enrolled facility. Prior to this time, Relator was unware of the falsity of Defendant's practices due to her time in training and that the billing software would automatically populate the fraudulent billing information.

37.     On December 18, 2018, Patient Services Representative M.B., emailed Patient Accounting Supervisor M.B.G. in response to certain claims being rejected. The email identified 4 patients[7] whose claims had been rejected by Medicaid for the reason: "billing provider not registered PROMISe provider."

38.     M.B. inquired why these rejections were occurring. In response, copying the Medical Assistance Billing Team, M.B.G. stated:

> For any of these claims rejecting for Norwin Hills, [C.F.] said to bill using Westmoreland since Norwin is a part of Westmoreland. I changed this in the patient type so you can add a claim, and it should drop using WH SSU npi#. Please let me know if this doesn't work.

---

[7] Relator possess each patient's full name, date of claim, patient control number applied by Defendant, and Payor Claim Control Number and readily satisfies 9(b) with this information.

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

39.     Once made aware of the illegal conduct, Relator took prompt action. On December 20, 2018, Relator emailed Revenue Cycle Director C.F., Patient Account Manager T.M., Patient Accounting Manager M.W., and M.B.G., expressing her concerns about the legality of Defendant's conduct. Relator believed it was against the law to bill Medicaid for services provided at a facility that was not enrolled in Medicaid, and further it was fraudulent for Defendant to then change NPIs to a facility that was an enrolled provider in order to submit claims for payment — ultimately receiving payment based on those false representations of where services were actually rendered.

40.     Specifically, Relator understood that Defendant's Norwin Medical Commons facility (NPI No. 1033386677) was not an enrolled Medicaid provider and did not have a provider agreement in place, yet was rendering services to Medicaid and Medicare beneficiaries.[8]   When submitting its bill, Defendant would change the NPI number to one of its Westmoreland facilities (generally NPI No. 1689691214 or NPI No. 1013934520), which were enrolled as Medicaid providers, when submitting claims for payment. Based on these false claims, Defendant would then receive payment.

41.     In response to Relator's email, an in-person meeting was held with C.F., T.M., and M.B.G. to assure Relator that it was not illegal or non-compliant to change the NPI on claims submitted to government payors to a provider that did not actually render the services. Relator was told by T.M., "We're entitled to that money."

---

[8] Norwin Medical Commons is not properly enrolled in Medicare or Medicaid.

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

42.     Unconvinced by Excela Health's response, Relator reached out directly to the Pennsylvania Department of Human Services (PDHS).

43.     Relator's December 27, 2018 email to PDHS stated:

> I have a general Medicaid billing question I am hoping you can answer. Is it okay to change the provider NPI number on a claim prior to submitting to the insurance for payment or is this a HIPAA violation? I feel it is a HIPAA violation and I posed this question to my supervisor, managers, and director and was assured that it is legal to change the facility NPI number on patients' claim(s) and it would not reflect in the patient's medical records. An example of this is a patient had services rendered in our Westmoreland Hospital DBA Norwin Medical Commons provider NPI 1033386677 but because the insurances are not recognizing the Norwin Medical Commons provider NPI number, we are to change it and bill under Westmoreland Hospital Short Stay Unit provider NPI 1013934520. If you can give me any information or feedback I would appreciate it. I have this gut feeling I am doing something wrong so I want to make sure before moving forward that I am allowed to do this.

44.     The official response she received from PDHS on December 28, 2018 stated:

> If the location under Norwin isn't enrolled with us and that's where the services were rendered they can't just change the provider NPI to an active location if the services weren't done there.  If the services were performed in a different service location that was enrolled and the billing was submitted in error then it is ok to change the NPI since the entry was in error, not that the service location was not enrolled. If providers at Norwin continue to see patients at that location, then the Norwin location MUST be enrolled in order to receive payment. *Having patients seen at one location that isn't enrolled then billing under a different location in order to get paid, constitutes fraud.* (Emphasis added.)

45.     In a follow up email to Relator on December 31, 2018, Ms. Wolfe further emphasized the state's position: "Westmoreland cannot have patients seen at Norwin billed under Westmoreland's ID number."

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

46. With her suspicions confirmed, Relator passed along the response from PDHS to her supervisors, including C.F., M.B.G., and T.M. on January 2, 2019.

47. Relator received no response to her email. Instead, C.F. later stopped by her desk and indicated she had reached out to the State regarding Relator's email.

48. Relator continued to perform her duties, but refused to process billings through Westmoreland that would have required her to swap the NPI locations, including Defendant's Norwin Medical Commons, Latrobe Epic Rehabilitation, and Quick Draw facilities—conduct which she reasonably believed to be illegal.

49. On April 5, 2019, Relator was informed that Defendant had enrolled Norwin Medical Commons under NPI 1033386677 in Pennsylvania's Medicaid program. Relator, however, quickly realized that Defendants had fraudulently secured the enrollment by representing that Norwin Medical Commons was a *hospital-based medical clinic* (provider/specialty 01-183). In fact, Norwin Medical Commons is an ambulatory health care facility or "ASC" (provider/specialty 02-020). Relator believes Defendant's misrepresentation to the state enabled Norwin Medical Commons enrollment in the Medicaid program.

50. Relator believes on information and belief that this conduct extends back to Norwin Medical Commons' enumeration date in 2008, but knows from her first hand observation that the conduct has been ongoing since she began her employment in December of 2014. Once she became aware of the conduct she reviewed previous claims and saw claims going back to 2014 in which the NPIs were swapped.

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

## B. Relator Uncovers Numerous Instances of Defendant's Fraudulent Conduct

51.     Once aware of Defendant's illegal conduct, Relator came across numerous instances in which patients had clearly been seen at Norwin Medical Commons, yet the billing documentation indicated that services had been rendered at Westmoreland. It was clear to Relator that Defendant had the NPIs changed for billing purposes to Medicaid and Medicare, since Norwin Medical Commons was not a provider or supplier of Medicaid or Medicare services and the claims would otherwise be rejected.

52.     The following example of Patient A illustrates a comparison between the internal documentation kept by Defendant against the billing information provided to government payors.

| Date of Service | May 31, 2017 |
|---|---|
| Patient Name | Patient A[9] |
| Service Location | Excela Health Norwin Medical Commons: Irwin, PA |
| Service Location NPI | 1033386677 |
| Service Location | Clinic/Center |
| Service Location | N/A |
| Location Claimed as Place of Treatment on Bill (Billed Facility) | Westmoreland Hospital Association: Greensburg, PA |
| Billed Facility NPI | 1689691214 |
| Billed Facility Primary Taxonomy | General Acute Care Hospital |
| Billed Facility MA ID Number | 1007748470028 |
| MA Reimbursement Amount | $1,909.96 |

_____

[9] Relator possess Patient A's full name and can provide it to Defendant at the appropriate time, but this information readily satisfies 9(b) requirements.

15

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

| | |
|---|---|
| **Alleged False Payment Due To Defendant's Conduct** | $1,909.96 |
| **Relator's Comment** | Patient treated at Excela Health Norwin Medical Commons. Services were billed as though the patient treated at Westmoreland Hospital in order to qualify for MA reimbursement. |

53.     In early January 2019 Relator brought the above example to Epremis[10] biller A.C. and inquired why the Explanation of Benefits showed that treatment occurred at Westmoreland Hospital Association NPI 1689691214, when in reality treatment occurred at Excela Health Norwin Medical Commons NPI 1033386677, as displayed in Patient A's STAR[11] account. Relator was told by A.C. that she changes the name/NPI of the facility in Epremis in order to process the payment, because the claim is rejected using NPI 1033386677 — because Excela Health Norwin Medical Commons was not an enrolled Medicaid provider.

54.     Additional examples of Defendant's fraudulent billing practices include:

| Patient | Service Location | Date of Service | Amount Billed to Payor | Billed Location |
|---------|------------------|-----------------|------------------------|-----------------|
| Patient B | Norwin Medical Commons | May 15, 2017 | $2,980.80; Medicaid | Westmoreland Hospital Association |
| Patient C | Norwin Medical Commons | May 03, 2018 | $1,133.80; Medicaid | Westmoreland Hospital Association |

---

[10] Epremis (Change healthcare) is a web-based application used by Defendant to edit, validate, and send claims to payors.
[11] McKesson STAR is Defendant's IT platform used for patient accounts and related claims. Once a claim has been processed in STAR it goes through Epremis for validation and is then submitted to third party payors, like Medicaid and Medicare.

16

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

| Patient D | Norwin Medical Commons | Sep. 4-26, 2018 | $1,400.00; Medicaid | Westmoreland Hospital Association |
|---|---|---|---|---|
| Patient E | Norwin Medical Commons | Oct. 03, 2018 | $397.00; Medicaid | Westmoreland Hospital Association |
| Patient D | Norwin Medical Commons | Oct. 1-12, 2018 | $1000.00; Medicaid | Westmoreland Hospital Association |
| Patient F | Norwin Medical Commons | Oct. 29, 2019 | $709.00; Medicaid | Westmoreland Hospital Association |
| Patient G | Norwin Medical Commons | Oct. 31, 2018 | $1,964.00; Medicaid | Westmoreland Hospital Association |
| Patient H | Norwin Medical Commons | Nov. 3, 2018 | $493.00; Medicaid | Westmoreland Hospital Association |
| Patient I | Norwin Medical Commons | Nov. 27, 2018 | Amount Unspecified;[12] Medicare | Westmoreland Hospital Association |
| Patient J | Norwin Medical Commons | Dec. 13, 2018 | $1,777.15; Medicaid | Westmoreland Hospital Association |
| Patient K | EPIC Rehab | Fed. 21, 2019 | $20,701.81; Medicaid | Westmoreland Hospital Association |

55. Relator reviewed patient accounts to determine the extent of the fraudulent changing of NPIs. She identified more than 1,779 claims with outstanding balances that were submitted using a false NPI similar to the examples provided above. In addition, she noted thousands of claims that had already been paid by government payors due to Defendant's fraudulent conduct. Relator was able to identify that the conduct went back to at least 2014.

---

[12] This information is in the control and possession of Defendant.

17

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

56.    As exemplified above, claims fraudulently billed to Medicaid and Medicare range from hundreds to thousands of dollars for each claim.

57.    The claims with swapped NPIs are rendered false because Excela Health provided the services at a non-enrolled facility and then fraudulently submitted the bills with the NPI of a facility properly enrolled as a Medicaid provider, instead of the facility where services were actually performed.

### C. The Government Is Routinely Billed and Pays for Services Rendered at an Non-Enrolled Provider

57.    To receive payment for covered Medicare services, a provider or supplier must be enrolled in the Medicare program. 42 C.F.R. § 424.505.

58.    All Medicaid providers are required to enter into a provider agreement with the State as a condition of participation in the program. 42 C.F.R. §431.107(b).

59.    Further, the enrolled provider or supplier's NPI must be included on all claims submitted under the Medicaid and Medicare programs. 42 C.F.R. §431.107(b)(5); 45 C.F.R. § 162.410.

60.    Defendant was not eligible to receive payment for services rendered to Medicare and Medicaid beneficiaries at a facility that was not enrolled in either program.

61.    Defendant submitted false claims for payment by using another enrolled facility's NPI, along with its associated Medicaid and Medicare Provider Number, when submitting claims for payment for services rendered at a non-enrolled facility.

18

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

62.    Due to Defendant's falsification of records and improper use of NPIs, the Government is routinely billed for and pays for services rendered to government pay beneficiaries at a facility that is not enrolled as a provider.

**VI.    Excela Health's Conduct Violates the FCA**

63.    A paradigmatic "false or fraudulent claim" is one submitted for goods or services that were not delivered or did not conform to the government's specifications. Here, Excela Health provided services to Medicaid and Medicare beneficiaries at unapproved facilities that were not enrolled as Medicaid or Medicare providers or suppliers. Then, in order to get paid, Excel Health submitted falsified claims for payment by misrepresenting that the services were provided at proper facilities in accordance with the Social Security Act. Accordingly, Excela Health submitted payment for services that did not conform to the government's specifications.

64.    A violation under the False Claims Act can occur even if the product or service is deemed "equal" to what was promised.[13] A claim may be false even if the services billed were actually provided, if the purported provider did not actually render the service.[14]

65.    In submitting these false claims, Defendant acted knowingly, or at least with reckless disregard, in carrying out its fraudulent scheme to receive payment for

---

[13] *See e.g., U.S. v. Nat'l Wholesalers*, 236 F.2d 944, 949-951 (9th Cir. 1956) (finding a violation of the False Claims Act although substituted goods deemed "equal" in performance).

[14] *See Peterson v. Weinberger*, 508 F.2d 45, 52 (5th Cir. 1975) (holding that a defendant was liable under the FCA although services billed to Medicare were performed by qualified people, where the claim forms falsely certified that the defendant was the provider.); *see also*, S. Rep. No. 99-345, at 9 (1986), *reprinted* in 1986 U.S.C.C.A.N. 5266, 5274.

services rendered by facilities that are not providers or suppliers of Medicaid or Medicare. As discussed above, when claims were rejected because they "mistakenly" listed Norwin as the provider, Defendant intentionally swapped numbers to indicate Westmoreland Hospital as the provider rather than Norwin.

66.     As a sophisticated provider of extensive health care services, Defendant was obligated to know and comply with all applicable Medicare and Medicaid laws, regulations, and program instructions when submitting claims for payment. In fact, for each claim submitted, Defendant certifies that the "information is true, accurate, and complete," and that it understands "payment of this claim will be from Federal and State funds, and that any falsification or concealment of a material fact, may be prosecuted under Federal and State laws."[15] When Defendant used swapped NPI numbers to make it look like services were provided by an enrolled facility, it was knowingly providing false information to the Government and knowingly failing to provide services in compliance with the Social Security Act, 42 Code of Federal Regulations, and Pennsylvania Code 55.

67.     Defendant's cavalier and knowing approach to swapping was evident when Relator challenged the conduct and was summarily told, "we're entitled to that money."

68.     When Defendant submitted claims to Medicare or Medicaid using a non-enrolled facility's NPI (e.g. NPI for Norwin), those claims were rejected.  This fact demonstrates that the government payors intended to pay only for services provided by enrolled facilities—that is, that being an enrolled facility is material to the Government's

---

[15] 42 C.F.R. § 455.18; CMS Form 1500.

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

decision to pay for services provided by that facility. Put another way, whether a facility is enrolled as a provider of Medicaid and Medicare services has a natural tendency to influence, or is capable of influencing, the payment or receipt of money or property by the Government.

69. Moreover, the Government made clear that billing for services rendered at an ineligible facility is material to payment when it told Relator 1) "Norwin location MUST be enrolled in order to receive payment"; 2) "Having patients seen at one location that isn't enrolled then billing under a different location in order to get paid, constitutes fraud"; and 3) "Westmoreland cannot have patients seen at Norwin billed under Westmoreland's ID number."

70. Accordingly, by fraudulently swapping NPIs to make it appear that services were provided at a properly enrolled facility, when they were not, Defendant caused the Government to pay money it otherwise would not have paid.

## COUNT I
## VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT

Relator realleges each and every paragraph of this Complaint.

71. By the acts described above, Defendant knowingly presented or caused to be presented, a false or fraudulent claim for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

72. By virtue of the acts alleged above, Defendant knowingly made, used or caused to be made or used, a false record or statement material to a false or fraudulent claim in violation of 31 U.S.C. §3729(a)(1)(B).

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

73.     The United States, unaware of the falsity or fraudulent nature of the claims presented or caused to be presented by Defendant, paid for claims that otherwise would not have been paid because of Defendant's billing for services rendered by a non-enrolled provider or supplier and falsely representing that services were performed by an enrolled provider or supplier.

74.     Because of the Defendant's acts, and by reason of these payments and benefits given, the United States sustained damages and continues to be damaged in an amount to be determined at trial, and therefore is entitled to treble damages under the False Claims Act, plus the maximum penalty allowed in each year the fraudulent activity occurred for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### PRAYER FOR RELIEF

**WHEREFORE**, Relator Yohman and the United States of America request that this Court:

A.     Enter judgment for the United States Government and Relator and against Defendant;

B.     Order Defendant to cease and desist from violating the False Claims Act, 31 U.S.C. § 3729 *et seq.* and the Pennsylvania's Medicaid requirements;

C.     Award the United States Government three times the amount of the actual damages sustained by the government as a result of Defendant's violations of the False Claims Act as alleged in this Complaint;

22

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

D.    Assess civil penalties of $22,365.00, but not less than $5,500.00, against Defendant for each and every false claim submitted by Defendant to the United States government or third party acting on the Government's behalf in connection with the false statements and false claims alleged in this Complaint;

E.    Award Relator the maximum "relator's share" allowed pursuant to 31 U.S.C. § 3730(d);

F.    Award prejudgment interest;

G.    Award Relator statutory attorney's fees, costs, and expenses pursuant to 31 U.S.C. § 3730(d);

**H.**    Grant such other relief as the Court may deem just, necessary, and proper.

**RELATOR DEMANDS TRIAL BY JURY ON ALL COUNTS WHERE JURY IS AVAILABLE.**

Respectfully submitted,

Dated:  June 6, 2019

Andrew M. Stone, Esquire
PA I.D. No. 35176
STONE LAW FIRM, LLC
1806 Frick Building
437 Grant Street
Pittsburgh, PA  15219
Telephone: (412) 391-2005
astone@stone-law-firm.com

Susan M. Coler, #217621,
Nathaniel F. Smith, #397276
Gerald C. Robinson, #212787
HALUNEN LAW
1650 IDS Center
80 South Eighth Street

23

Filed Under Seal Pursuant
To 31 U.S.C. §3730(b)(2)

Minneapolis, MN 55402
Telephone:  (612) 605-4098
Facsimile:  (612) 605-4099
coler@halunenlaw.com
smith@halunenlaw.com
robinson@halunenlaw.com

Joseph Trautwein, #82848
Trautwein and Associates, LLC
1777 Sentry Parkway
Blue Bell, PA 19422
Telephone: (215) 764-2301
jtrautwein@cpmiteam.com

*ATTORNEYS FOR RELATOR*